UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA



## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

| | | |
|---|---|---|
| Case No. | CV 04-4375 DSF (CTx) | Date   September 27, 2004 |

Title   Space Exploration Technologies Corp. v. Northrop Grumman Space & Mission Systems, et al.

Present: The Honorable   DALE S. FISCHER, United States District Judge

| Paul D. Pierson | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:       (IN CHAMBERS) Order Denying Defendants' Motion to Dismiss
and to Strike

DOCKETED ON CM

SEP 3 0 2004

BY _____ 004

# I. INTRODUCTION

Defendants' Motion to Dismiss and to Strike was filed September 3, 2004.
Plaintiff's Opposition to Defendants' Motion to Dismiss and to Strike was filed
September 13, 2004.  Defendants' Reply in Support of Motion was filed September 20,
2004.

For the reasons discussed below, the Court DENIES Defendants' Motion to
Dismiss and to Strike.

# II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a
complaint if "it appears beyond doubt that the plaintiff can prove *no set of facts* in
support of [its] claim which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41,
45-46 (1957) (emphasis added).  Dismissal is appropriate only if the plaintiff fails to
assert a cognizable legal theory or to allege sufficient facts under a cognizable legal
theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling
on a motion to dismiss, the court must accept as true all material factual allegations in the
complaint and must construe them in the light most favorable to the plaintiff.  Cooper v.
Pickett, 137 F.3d 616, 622 (9th Cir. 1997).  However, the Court is not bound to assume
the truth of legal conclusions merely because they are stated in the form of factual
allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  A complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

"must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004) (quoting Swierkiewicz v. Sorema, 534 U.S. 506, 508 (2002)). Moreover, "there is a policy disfavoring the pre-trial dismissal of antitrust actions because the proof lies largely in the hands of the defendants." Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834 (9th Cir. 1980).

## III. FACTS

Space Exploration Technologies Corporation ("SpaceX") is a small technology company that designs, develops, produces, and launches a particular type of boost vehicles propelled by pintle injector rocket engines. ¶¶ 2, 4[1]. These boost vehicles are used for military target purposes and for placing cargo, such as satellites, into space. Id. Defendants, Northrop Grumman Space & Mission Systems Corp. and Northrop Grumman Corp. ("Northrop"), are leaders in space technology that also design and sell boost vehicles propelled by pintle injector rocket engines. ¶ 3-4. The companies are therefore competitors with respect to pintle engines for use in boost vehicles for government and private contracts. Id. "Historically, Northrop has been virtually the only entity to obtain contracts to provide pintle injector engines for use in boost vehicle launches. Determined to maintain its lock on the market, Northrop has engaged in a number of acts which, individually and taken together, are anticompetitive." ¶ 5.

"SpaceX is currently developing two launch vehicle models, Falcon I and Falcon V." ¶ 38. While developing these models, SpaceX has also been developing pintle injector engines for its Falcon program. ¶ 41. "Pintle injectors . . . are designed to mix fuel and oxygen in an extremely efficient manner, thus maximizing the conversion of rocket fuel into thrust." ¶ 42. "Relative to other propulsion options, pintle injectors are low cost, simple and reliable." ¶ 43. In order to design its pintle injector engines SpaceX has invested extensive amounts of time, money and research. ¶ 44. To protect its investment SpaceX has taken various measures to ensure that no proprietary information is disclosed. ¶ 48.

In March 2003 SpaceX held a private briefing on the Falcon design that was attended by an uninvited Northrop propulsion engineer. ¶ 52-53. Northrop also used its status as a Systems Engineering Technical Assistance ("SETA") government contractor, whereby it had been authorized by the U.S. Air Force to inspect SpaceX's designs on a contract with the U.S. Navy, to obtain SpaceX's proprietary information and trade

---

[1] The facts are taken from the First Amended Complaint and referred to by paragraph number only.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

secrets. ¶ 9, 55. SpaceX had significant concerns about disclosing its information to a competitor but was repeatedly assured by the government that Northrop would be subject to strict limitations. ¶ 57, 61. Northrop and SpaceX entered into a Mutual Nondisclosure Agreement. ¶ 58. Northrop committed itself not to disclose SpaceX's proprietary information "for any purpose other than to carry out and report to the Government on the mission assurance review." ¶ 59. Despite these commitments, Northrop personnel who were currently working on competing projects for Northrop obtained access to SpaceX's confidential and proprietary trade secret information. ¶ 9. Northrop also failed to return the illegally obtained information. Id. It is alleged that this behavior violates the Federal Acquisition Regulations ("FARs"). Id. The FARs recognize that when a competing company "requires proprietary information from others to perform a Government contract and can use the leverage of the contract to obtain it, the contractor may gain an unfair competitive advantage unless restrictions are imposed." ¶ 62. The FARs require that such a contractor take steps to mitigate the conflict of interest. Id. The Department of Defense Supplement to the FARs also imposes ethical standards of conduct directly on government contractors. ¶ 63. Such contractors must adopt management controls including a written code of business ethics, periodic review of business practices, mechanisms for reporting improper conduct, audits, and disciplinary and investigative procedures. Id.

In May 2004 Northrop filed a complaint in Superior Court against SpaceX alleging trade secret misappropriation. ¶ 6. SpaceX alleges that the complaint is frivolous and that Northrop is using the lawsuit as an attempt to "unlawfully extend and expand its rights under a portfolio of patents, which includes basic patents that have expired, and additional non-expired but more limited patents." ¶ 7.

SpaceX alleges that as a patent applicant Northrop was required to disclose to the public the details of the invention "in sufficient detail to permit a person of ordinary skill in the art of rocket engine design to implement the claimed rocket engine invention without undue experimentation." ¶ 88. The public can then use the invention after the patent expires. Id. SpaceX claims that if Northrop had fulfilled its obligation to disclose its technical innovations then Northrop has filed a frivolous trade secret action against SpaceX. ¶ 94.

SpaceX also alleges that even if Northrop retained some trade secrets that it was required to disclose when the patents were filed, it had contractual obligations to disclose these innovations to government agencies. ¶ 97. Several of the patents disclose that the invention was made in performance of a NASA contract. ¶ 98. As such, Northrop had a duty under Section 305 of the National Aeronautics and Space Act of 1958 to furnish a complete report containing all technical information concerning any invention made during such work. Id. SpaceX alleges that Northrop did not fulfill such obligations and instead attempted to retain the information as trade secrets. ¶ 100.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

The First Amended Complaint ("FAC") alleges: 1) violation of Section 2 of the Sherman Act; 2) fraud and deceit; 3) violation of California's Unfair Competition statute; 4) violation of California common law unfair competition; 5) misappropriation of trade secrets in violation of California Civil Code § 3426 et seq.; 6) breach of contract; 7) breach of confidence and fiduciary duties; 8) tortious interference with contractual relations; 9) tortious interference with prospective economic relations; 10) conspiracy/aiding and abetting; and 11) unjust enrichment. Northrop has moved to dismiss both the first and seventh causes of action.

## IV. DISCUSSION

"In order to state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must prove: (1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." Smilecare Dental Group v. Delta Dental Plan of California, Inc., 88 F.3d 780, 783 (9th Cir. 1996) (internal citations and quotations omitted). Northrop argues that Plaintiff has failed both sufficiently to define the relevant market and to allege antitrust injury.

### A. PLAINTIFF HAS SUFFICIENTLY DEFINED THE RELEVANT MARKET

The relevant market has two components: (1) the product market; and (2) the geographic market. Los Angeles Memorial Coliseum Comm'n v. NFL, 726 F.2d 1381, 1392 (9th Cir. 1984). Defendants challenge only Plaintiff's definition of the product market. The relevant product market has been defined as "the group of sellers or producers who have the actual or potential ability to deprive each other of significant levels of business." Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1434 (9th Cir. 1995) (internal citations and quotations omitted). "If the product and its substitutes are reasonably interchangeable by consumers for the same purposes, or if they have a high cross-elasticity of demand in the trade, they will be included in the same market . . . ." M.A.P. Oil Co., Inc. v. Texaco, Inc., 691 F.2d 1303, 1306 (9th Cir. 1982). Definition of the relevant market is often a factual issue that can be determined only after consideration of the commercial realities faced by consumers. E.g., Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 482 (1992). Where plaintiff alleges that there are no other interchangeable products in the market and these allegations are at least plausible, that is sufficient to survive a motion to dismiss, even though the allegations may not ultimately be correct. Pinnacle Sys., Inc. v. XOS Techs., Inc., No. C-02-03804-RMW, 2003 WL 21397845, at *7 (N.D. Cal. June 17, 2003); Brownlee v. Applied Biosystems, Inc., No. C 88 20672 RPA, 1989 WL 53864, at *3 (N.D. Cal. Jan. 9, 1989) ("Although plaintiffs' market is narrowly defined and *may* be implausible as a theoretical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

matter, plaintiffs are entitled to the opportunity to prove their allegation that there is a submarket consisting solely of CE-based separation instruments.").

Here SpaceX alleges that "[t]he relevant market in which competition has been restrained is the market for pintle injector rocket engines used to propel boost vehicles, and any submarkets therein." ¶ 103. SpaceX further claims that "pintle and non-pintle engines are not considered substitutes by consumers of engines for boost vehicles. As Northrop has long advertised, pintle engines are simple in design and 'can be easily adjusted and optimized by changing only two simple parts,' reducing the time and cost of development and testing." ¶ 105. These allegations are sufficient to show that SpaceX believes there are no reasonably interchangeable products in the market. The Court has no basis to conclude otherwise at this stage of the proceedings.

Defendants' authorities are distinguishable. In Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430 (3d Cir. 1997), dismissal of plaintiff's Sherman Act claim was upheld where it was alleged that the relevant market was "ingredients, supplies, materials, and distribution services used in the operation of Domino's pizza stores." Id. at 437. It was apparent from the face of the complaint that Domino's approved pizza ingredients were different from other ingredients and supplies only because the terms of Domino's franchise agreement allowed franchisees only to use the Domino's approved supplies. Id. at 438. This demonstrated to the Court that the supplies were interchangeable. Id. Here the Court cannot decide from the face of the complaint that other propulsion options are interchangeable when Plaintiff specifically contends they are not.

Similarly, in Tanaka v. Univ. of Southern California, 252 F.3d 1059 (9th Cir. 2001), the court found that plaintiff had failed to identify an appropriately defined product market and affirmed the dismissal of her complaint. Id. at 1063-64. There a college soccer player brought antitrust claims against the University of Southern California for restraining her transfer to UCLA. Id. at 1061-62. The plaintiff alleged that the relevant market was "UCLA women's soccer program" because it was not interchangeable with any other soccer program. Id. at 1063. The court reasoned that the very nature of collegiate athletic programs made her definition of the relevant market totally implausible, because in order for one college athletic program to exist there must necessarily be other college programs to compete against. Id. at 1063-64. Thus interchangeable programs were obvious from the face of the complaint. The Court cannot say that such is the case here. Defendants also cite several cases where the court decided at the summary judgment stage that a relevant market had not been properly defined. Those cases are clearly distinguishable because this is a motion to dismiss.

Assuming the facts alleged in Plaintiff's complaint to be true, as the Court must, Plaintiff may be entitled to relief. Therefore, the first cause of action will not be dismissed for failure sufficiently to define the relevant market.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

B.  PLAINTIFF HAS SUFFICIENTLY ALLEGED ANTITRUST INJURY

In order to bring a private antitrust claim, the plaintiff must show antitrust standing, a requirement beyond constitutional standing.  Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal., 190 F.3d 1051, 1054 (9th Cir. 1999).  In determining whether a plaintiff has antitrust standing, courts "'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them' . . . to determine whether a plaintiff is a proper party to bring an antitrust claim."  Id. (quoting Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 (1983)).  The factors to be assessed include:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type antitrust laws were intended to forestall;
> (2) the directness of the injury;
> (3) the speculative measure of the harm;
> (4) the risk of duplicative recovery; and
> (5) the complexity in apportioning damages.

Am. Ad Mgmt., Inc., 190 F.3d at 1054.

Defendants seem to take issue only with whether Plaintiff can show that the injury is the type the antitrust laws were intended to forestall.[2]  In order to recover on a private antitrust action, plaintiffs "must prove more than that they suffered injury which was causally linked to an illegal presence in the market; they must prove injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful."  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 477 (1977).  "Antitrust injury is made up of four elements:  (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  Glen Holly Entm't, Inc. v. Tektronix, Inc., 343 F.3d 1000, 1008 (9th Cir. 2003) (internal citations and quotations omitted).  In addition a fifth requirement is that "the injured party be a participant in the same market as the alleged malefactors."  Id. (internal citations and quotations omitted).

It appears to be only the fourth element that Defendants argue is missing.  In determining whether an injury is of the type the antitrust laws were intended to prevent, courts assess the effect the alleged acts have on competition in the market.  Id. at 1009-10.  "An antitrust plaintiff must prove that the restraint in question injures competition in

---

[2] It is unclear from Defendants' motion whether they take issue with Plaintiff's allegations of standing or with Plaintiff's allegations of injury.  Because Defendants seem to focus their argument exclusively on the element of injury, the Court presumes that this is the only aspect of antitrust standing that Defendants dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

the relevant market; injury to the plaintiff alone is not sufficient to prove injury to competition." Theee Movies of Tarzana v. Pacific Theatres, Inc., 828 F.2d 1395, 1400 (9th Cir. 1987). The antitrust laws were enacted in order to protect competition not competitors. Brunswick Corp., 429 U.S. at 488. An injury sustained because the alleged activity actually increases competition is not actionable. Brunswick, 429 U.S. at 488. Competitive injury is shown when the alleged anticompetitive acts "harm allocative efficiency and raise the price of goods above their competitive level or diminish their quality." Pool Water Prods. v. Olin Corp., 258 F.3d 1024, 1034 (9th Cir. 2001) (internal citations and quotations omitted). Where the complaint alleges anticompetitive acts and "[i]t is not inconceivable that such acts could harm competition when undertaken by a firm with market power . . . [t]he allegations are . . . sufficient to withstand a motion to dismiss." Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc., 627 F.2d 919, 926 (9th Cir. 1980) (even though "the specific acts detailed may be beyond the reach of the antitrust laws because they harm not competition but individual competitors").

Defendants argue that SpaceX has failed properly to allege antitrust injury because it has not alleged an injury to the market. However, Plaintiff alleges that "[a]s a result of Northrop's conduct, competition within the relevant market has been and will be further suppressed and destroyed, and consumers of pintle injector engines are being and will be denied the benefits of competition." ¶ 120. This is not a conclusory allegation, as Plaintiff provides ample factual support for such an injury to competition. Plaintiff alleges Defendants have made false and frivolous claims of trade secret misappropriation and have fraudulently sought to enforce their patents. Fraudulent procurement of patents and patent infringement actions brought in bad faith have been recognized by the courts as potential violations of the antitrust laws. Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965) (enforcement of a patent procured by fraud could give rise to a violation of Section 2 of the Sherman Act provided that the other elements are present); Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282 (9th Cir. 1984) (antitrust liability could be premised on prosecution of a patent infringement action where it was known that the patent was invalid). Trade secret claims brought in bad faith may also constitute a violation of the antitrust laws. CVD, Inc. v. Raytheon Co., 769 F.2d 842 (1st Cir. 1985) (antitrust violation could be shown if plaintiff could show by clear and convincing evidence that defendant asserted trade secrets with the knowledge that none existed).

Plaintiff has alleged that it has suffered injury in the form of attorney's fees needed to defend the frivolous trade secrets litigation. ¶ 112. Plaintiff also alleges that Northrop's failure to share its technical innovations through its patents and required public disclosure has "enabled Northrop to obtain a monopoly in the relevant market and [has] had a chilling effect on competition by setting high barriers to entry in the pintle injector rocket engine market." ¶ 84. Plaintiff's allegations show: 1) defendants' acts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

harmed competition in the pintle engine market; and 2) plaintiff was thereby directly injured based on its status as a competitor in that market. Therefore, the first cause of action adequately alleges antitrust injury.

The cases Defendants cite are distinguishable. In Theee Movies of Tarzana, 828 F.2d at 1400-01, the Court affirmed a finding on summary judgment that the plaintiff had failed to produce evidence of an antitrust injury. The Court found that the evidence showed an actual increase in competition as a result of defendant's alleged injurious behavior. Similarly, in Brunswick Corp., the Court overturned a judgment awarding antitrust damages for behavior that actually preserved competition. Brunswick Corp., 429 U.S. at 488-89. Smilecare Dental Group, 88 F.3d 780, is the only case Defendants cite where an antitrust action was actually dismissed for failure to state a claim on the grounds that no antitrust injury had been alleged. In Smilecare, however, the plaintiff and defendant were found not to be direct competitors and the challenged conduct was found to be legitimate. Id. at 785-86. Here Plaintiff has adequately alleged antitrust injury.

## C.  PLAINTIFF HAS IDENTIFIED A BASIS FOR A CONFIDENTIAL OR FIDUCIARY DUTY

Defendants argue that Plaintiff's claim for breach of confidence/fiduciary duty should be dismissed because Plaintiff fails to allege a sufficient basis for a confidential or fiduciary relationship. Such a relationship is based on "the trust or confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed." Rickel v. Schwinn Bicycle Co., 144 Cal. App. 3d 648, 654 (1983) (internal citations and quotations omitted). "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." Barbara A. v. John G., 145 Cal. App. 3d 369, 383 (1983), cited with approval by Beery v. State Bar, 43 Cal. 3d 802, 813 (1987). The existence of a contractual relationship, on its own, does not give rise to a fiduciary or confidential relationship. Rickel, 144 Cal. App. 3d at 655. Whether such a relationship exists is a question of fact that depends on the circumstances of each case. Daisy Sys. Corp. v. Bear Stearns & Co., 97 F.3d 1171, 1178 (9th Cir. 1996); MTC Elec. Techs. Co., Ltd. v. Leung, 889 F. Supp. 396, 402 (C.D. Cal. 1995) (refusing to engage in factual analysis of whether a fiduciary relationship existed on a motion to dismiss).

Here Plaintiff alleges that "Northrop was in a confidential and/or fiduciary relationship with SpaceX because of its position as a SETA contractor, because of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

ethical obligations and industry standards for SETA contractors and because SpaceX reposed trust and confidence in Northrop when SpaceX disclosed its confidential and proprietary information to Northrop, which Northrop knew and understood." ¶ 146.

Plaintiff further alleges "Northrop's abuse of its position as a SETA contractor and its conscious effort to obtain access to SpaceX's proprietary information . . . violate its confidential and fiduciary duties . . . ." ¶ 74. Defendants argue that because of Northrop's position as a SETA contractor a duty ran only to the government, not to the Plaintiff. The Court finds this argument unpersuasive, as it would lead to a breakdown in the government contractor inspection system. No company would rationally allow a competitor to make such inspections without some duty flowing both to the government and the inspected entity. The alleged relationship does not fit the mold of the traditional fiduciary relationship, such as the guardian and ward, trustee and beneficiary, or attorney and client. Nevertheless, Plaintiff has adequately alleged facts that might lead a trier of fact to conclude a confidential or fiduciary relationship existed.

### D. <u>DEFENDANTS HAVE FAILED TO SHOW THAT PORTIONS OF THE FIRST AMENDED COMPLAINT SHOULD BE STRICKEN</u>

Federal Rule of Civil Procedure 12(f) permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief . . . being pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993) (citing 5 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1382, pp.706-07 (1990)), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Fogerty v. Fantasy, Inc.</u>, 510 U. S. 517 (1994). "The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating serious issues by dispensing with those issues prior to trial." <u>Bassiri v. Xerox Corp.</u>, 292 F. Supp. 2d 1212, 1219 (C.D. Cal. 2003); <u>see also</u> <u>California ex rel. State Lands Comm'n v. United States</u>, 512 F. Supp 36, 38 (N.D. Cal. 1981) ("[W]here the motion may have the effect of making trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well-taken."). Nevertheless, Rule 12(f) motions to strike are "viewed with disfavor and are not frequently granted." <u>Bassiri</u>, 292 F. Supp. 2d at 1220; <u>Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). In reviewing a 12(f) motion, courts view the pleading under attack in the light most favorable to the non-moving party. <u>Bassiri</u>, 292 F. Supp. 2d at 1220. Therefore, "[m]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." <u>Id.</u> (quoting <u>LeDuc v. Kentucky Cent. Life Ins. Co.</u>, 814 F. Supp. 820, 823 (N.D. Cal. 1992)). Courts often require a "showing of prejudice by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

moving party" before the challenged material will be stricken. <u>Cal. Dep't of Toxic Substances Control</u>, 217 F. Supp. 2d at 1033.

Defendants have made no effort to establish prejudice. Defendants' argument that Plaintiff's allegations have no bearing on the present lawsuit and are irrelevant is inaccurate. The Court finds the allegations may have a bearing on the litigation. The Motion to Strike is denied.

# V. <u>CONCLUSION</u>

For the reasons previously stated, this Court DENIES Defendants' Motion to Dismiss and to Strike.

Initials of  Preparer: _____